<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HOLLY SCHAFER, | Civil Action No. 23-348 |
| *Plaintiff*, | |
| v. | **OPINION** |
| CONOPCO, INC., d/b/a UNILEVER HOME & PERSONAL CARE USA, | March 4, 2026 |
| *Defendant*. | |

**SEMPER**, District Judge.

  **THIS MATTER** comes before the Court on Defendant Conopco, Inc. d/b/a Unilver Home & Personal Care USA's ("Defendant") motion to preclude Plaintiff Holly Schafer's ("Plaintiff") expert from testifying at trial (ECF 41, "Daubert Mot.") and Defendant's motion for summary judgment (ECF 43, "SJM"). Plaintiff opposed both motions (ECF 45, "Daubert Opp."; ECF 46, "SJM Opp.")  Defendant filed reply briefs.  (ECF 49, "Daubert Reply"; ECF 47, "SJM Reply".) The Court reviewed the submissions made in support of and in opposition to the motions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendant's motions are **GRANTED**.

## I.  <u>MOTION TO PRECLUDE</u>

  Defendant has filed a motion to preclude the testimony of Dr. Marc Serota, an expert retained by Plaintiff, "pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." (Daubert Mot. at 1.)  In her Complaint, Plaintiff alleges that she experienced an allergic reaction to a preservative called DMDM

hydantoin in TRESemmé shampoo manufactured by Defendant Unilever, and that such a reaction caused her to temporarily lose hair. (*Id.*) Plaintiff hired an expert, Dr. Marc Serota, who prepared an expert report and was deposed in the course of this and other related litigation. (*See* ECF 55-1, 55-4.) Defendant has included the depositions of Plaintiff and Plaintiff's treating physician, Dr. Donna Gavarone, as exhibits for this Court's consideration. (*See* ECF 55-2, ECF 55-3.)

### A. Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc*, the Supreme Court held that district courts must act as gatekeepers to ensure proffered expert scientific testimony meets the requirements of Rule 702. *See* 509 U.S. 579, 589 (1993). And in *Kumho Tire Co. v. Carmichael*, the Court held that "this basic gatekeeping obligation" "applies to all expert testimony," not just "scientific" testimony. 526 U.S. 137, 147 (1999).

"Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). First, the proffered witness must be a qualified expert, meaning that the witness must possess specialized expertise. *Feit v. Great-West Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632,

636 (D.N.J. 2006). Second, the testimony must be reliable. This requirement has been interpreted to mean that an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Id.* (citing *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995)). Thus, "[c]ourts need not admit bare conclusions or mere assumptions proffered under the guise of 'expert opinions [,]'" *id.* at 637, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997). Third, the expert's testimony must "fit," meaning that the testimony "'must be relevant for the purposes of the case and must assist the trier of fact.'" *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003)).

An expert who renders an opinion based on factual assumptions not present in the case "cannot be said to 'assist the trier of fact,' as Rule 702 requires." *Elcock*, 233 F.3d at 756 n. 13. Consequently, "[t]his type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement" of Rule 702. *Id.* "A court 'must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.'" *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 293 (D.N.J. 2011) (citing *Oddi v. Ford Motor Co.,* 234 F.3d 136, 145 (3d Cir. 2000).

The proponent of expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence. *In re Paoli*, 35 F.3d at 744.

**B. Discussion**

Defendant argues that Plaintiff cannot meet her burden of establishing that Dr. Serota's opinion is reliable. (Daubert Mot. at 21.) Specifically, Defendant points to Dr. Serota's deposition testimony where he admitted that his opinion was wrong and that he "could not even speculate as to how TRESemmé could have possibly caused Plaintiff's alleged hair loss" was speculative. (*Id.* at 23.) Defendant also argues that even if Dr. Serota had not conceded his opinion was wrong, it would still be inadmissible for Dr. Serota's failure to conduct requisite procedures and diagnostic techniques, like the administration of a patch test or a physical examination of Plaintiff. (*Id.* at 23-30.) Plaintiff counters that Dr. Serota employed reliable diagnostic techniques to opine that TRESemmé caused Plaintiff's hair loss, namely "the close temporal relationship between the onset of Ms. Schafer's hair loss and her use of TRESemmé." (Daubert Opp. at 23.) Plaintiff also contends that Defendant's arguments go to the weight, rather than admissibility, of the expert testimony here. (*Id.* at 26.)

The opinion offered by Dr. Serota's expert report fails to meet the requirements set forth in Rule 702 as well as the standard for the admissibility of expert opinions established by *Daubert*. Dr. Serota's own sworn testimony at his deposition contradicts the findings of his expert report. In his expert report, Dr. Serota opines, based on his experience as practicing dermatologist, that DMDM hydantoin in TRESemmé products commonly causes contact dermatitis, and that contact dermatitis of the scalp can cause hair loss. (*Id.* at 22) (citing ECF 55-1, "Serota Rep." ¶¶ 10-14, 18-22, 24-25.) Dr. Serota then opines beyond a reasonable degree of medical certainty that TRESemmé caused Ms. Schafer's hair loss, based on the strong temporal connection between her

4

exposure to TRESemmé, her scalp reactions, and hair loss.[1]  (*Id.* at 26.)  However, during Dr. Serota's deposition, when presented with Plaintiff's sworn testimony that she never experienced dermatitis, Dr. Serota responded: "I don't know if that was clear to me. . . I would need to see what you are referring to."  (ECF 55-4, "Serota Dep.", 124:19-124:4.)  After being read Plaintiff's testimony that she never experienced or noticed "any rashes, irritation, scaling, or bleeding in [her] scalp" (*id.*, 125:6-17), Dr. Serota invoked Plaintiff's testimony about a "tingling" sensation she felt after using TRESemmé products, which "would be a sign of a reaction[.]"[2]  (*Id.*, 128:6-22.)  But, after reviewing Plaintiff's testimony that such tingling lasted for only a few seconds, Dr. Serota conceded that a tingling reaction due to contact dermatitis "would be present for somewhere between 24 and 72 hours" and thus would last "longer than a few seconds[.]"[3]  (*Id.*, 136:19-137:2.)

Dr. Serota then testified that Plaintiff's reported experience of tingling was "not a typical history for allergic contact dermatitis" and that he had never seen or diagnosed *any* patient with dermatitis when the only symptom was tingling.  (*Id.*, 137:8-9, 137:11-16.)  He also conceded that he could not identify any authority or literature that would support a diagnosis under those circumstances.  (*Id.*, 137:18-138:13.)  After this discussion, Dr. Serota was asked if he could opine

---

[1] Plaintiff reported that she began using TRESemmé shampoos and conditioners starting in early 2021, which caused her to experience "tingling" on her scalp.  (ECF 55-2, "Pl. Dep.", 70:12-71:6, 51:1-53:4.)  Plaintiff reported hair loss beginning in March or April 2021, increasing in severity after using TRESemmé shampoo and conditioner.  (*Id.*, 75:10-76:9.)  After Plaintiff stopped using TRESemmé, she experienced hair loss for about five months, and it took about "a year and some change" to return and regrow.  (*Id.*, 106:9-25, 107:25-108:11.)

[2] In her opposition brief, Plaintiff also cites the tingling sensation reported by Plaintiff as evidence of contact dermatitis.  (*See* Daubert Opp. at 2) ("However, 'tingling' is a common symptom of contact dermatitis.")

[3] Dr. Serota later testified that he had no "objective evidence in this case that [Plaintiff] suffered visible signs of dermatitis" and "objectively, I don't see any signs of dermatitis that were presented on this case." (Serota Dep., 148:3-7, 151:2-5.)

to a reasonable degree of medical certainty whether TRESemmé substantially contributed to Plaintiff's hair loss, as alleged in his expert report, and he responded only that Plaintiff's hair loss "seems to correlate" with her use of TRESemmé products. (*Id.*, 148:9-24; *see also id.*, 164:8-21 ("I think what I could say to a reasonable degree of medical certainty is that exposure to the TRESemmé product correlates with her symptoms"); *id.*, 166:24 ("the symptomatology correlates with her exposure to the product"); *id.*, 175:6 ("it seems to correlate").)

Dr. Serota admitted that "the mechanism of [plaintiff's hair loss] being allergic contact dermatitis may not be correct" (*id.*, 148:24-149:2) and that he could not "state to a reasonable degree of medical certainty from a scientific perspective what that mechanism was." (*Id.*, 153:22-25.) In fact, he repeatedly stated that he did not "have enough information to be able to speculate on the underlying mechanism" that caused Plaintiff's hair loss.[4] (*Id.*, 166:8-20.) Thus, Dr. Serota's testimony did not just undermine, it completely *invalidated* his theory of causation, and he was unable to offer an alternate theory without speculation.

The expert testimony here does not meet the reliability or fit requirements of Rule 702. As part of the reliability assessment, "the expert must have 'good grounds' for his or her belief." *In re Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). Dr. Serota's testimony demonstrates he does not have good grounds for his belief that TRESemmé caused Plaintiff's hair loss. (*See* Serota Dep., 164:17-21) ("Whether the mechanism is allergic contact or a different mechanism, I don't think, in this particular case, I can opine with a reasonable degree of medical certainty.")

---

[4] *See also id.*, 154:3-6 ("Q. What type of mechanism could it be? A. I don't think I can speculate on that."); *id.*, 154:21-23 ("I don't have enough information to speculate on a mechanism."); id., 154:25-155:5 ("Q. What other mechanisms could it be? MR. FEARON: Objection. A. Again, it would be me speculating."); *id.*, 164:17-21 ("Whether the mechanism is allergic contact or a different mechanism, I don't think, in this particular case, I can opine with a reasonable degree of medical certainty.")

During his deposition, his expert opinion shifted from causation to correlation. Therefore, Dr. Serota cannot be allowed to testify to the original causation theory proffered in his expert report.

"In addition to reliability, Rule 702 requires that the expert's testimony must assist the trier of fact" which means "the requirement of reliability, or 'good grounds,' extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case." *In re Paoli*, 35 F.3d at 743. "The opinion must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Travelers Prop. Cas. Co. of Am. v. Hallam Eng'g & Const. Corp.*, No. 08-0444, 2013 WL 30174, at *6 (D.N.J. Jan. 2, 2013) (cleaned up). When an expert's theory of causation is not supported by the underlying facts, it flunks the "fit" requirement and must be rejected. *See, e.g., State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 186 (3d Cir. 2006) ("the Court here did not err in excluding Gray's testimony because he was only able to state how the fire started in terms of mere possibilities, and this causal supposition was not sufficiently supported by evidence in the record"). Because Dr. Serota admitted that his theory of causation was not supported by the underlying facts of Plaintiff's case, it fails the fit requirement.

In opposition, Plaintiff argues that Dr. Serota's opinions "are relevant, flow from the facts, and will aid the jury in determining general and specific causation issues." (Daubert Opp. at 26.) But Dr. Serota's opinion, as offered in his expert report, improperly relies on Plaintiff's own self-reporting of her symptoms. The Third Circuit advised that "a physician who evaluates a patient in preparation for litigation should seek more than a patient's self-report of symptoms or illness and hence should either examine the patient or review the patient's medical records[.]" *In re Paoli*, 35 F.3d at 762. Plaintiff contends that Plaintiff "gave detailed and sworn chronology of the onset and nature of her symptoms in her interrogatory responses and during her deposition" that more

accurately reflect "'the usual inducement to candor—with a physician' in medical records rather than a post-litigation symptom 'checklist' or similar document provided by a medical expert to a plaintiff during a lawsuit." (Daubert Opp. at 27) (quoting *In re Paoili*, 35 F.3d at 761.) This argument, and Plaintiff's use of selective quotations from *Paoli*, is unavailing. "While courts allow reliance on patient statements, they are based upon a personal history corroborated by medical records, a physical examination and medical tests." *In re Paoili*, 35 F.3d at 762. Dr. Serota did not perform a physical examination or any medical tests on Plaintiff (*see* Daubert Opp. at 15), and while Plaintiff is correct that this is not fatal itself, Plaintiff's medical records do not corroborate her self-report of symptoms.[5] Indeed, Dr. Serota admitted in his deposition that Plaintiff's medical records "do not document any sign of dermatitis" and that Plaintiff's treating physician "saw no signs of dermatitis on [Plaintiff]'s scalp[.]" (Serota Dep., 144:6-17.)

For the foregoing reasons, the expert testimony here does not meet the standard for admissibility under Rule 702 or *Daubert* and must be excluded. The Court need not conduct an evidentiary hearing to make this determination. *See Oddi*, 234 F.3d at 154-55 (affirming a district court's denial of an evidentiary hearing where the depositions and affidavits of plaintiff's expert sufficiently explained the basis for his conclusions); *Feit*, 271 F. App'x at 250 (finding no error with District Court's conclusion that no hearing was necessary because the record included an

---

[5] In July 2021, Plaintiff visited her personal physician Dr. Donna Gavarone to discuss her alleged hair loss and told Dr. Gavarone that she believed she was losing hair because of COVID. (Pl. Dep., 129:6-14.) During her deposition, Dr. Gavarone confirmed she never observed any signs of dermatitis on Plaintiff. (ECF 55-3, Gavarone Dep., 38:7-39:5, 41:24-42:6, 45:25-46:19, 47:7-49:8, 50:10-51:6, 52:12-53:3.) Dr. Gavarone testified that she never observed any noticeable signs of hair loss on Plaintiff either, contrary to Plaintiff's claims in this case. (*Id.*) Dr. Gavarone told Plaintiff that whatever hair loss she may have experienced was likely hereditary because her mother, who Dr. Gavarone also treated, had thinning hair. (*Id.*, 66:19-22, 68:1-12.)

"expert report, deposition, and letter brief").   Defendant's motion to preclude is therefore **GRANTED**.

## II.   <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant has simultaneously filed a motion for summary judgment, asking this Court to dismiss all counts of Plaintiff's Complaint.[6]  (SJM Mot. at 1.)  Defendant argues that because Dr. Serota's opinion "flunks basic admissibility standards," Plaintiff's sole causation cannot be admitted at trial, and thus her Complaint must be dismissed because Plaintiff cannot meet her burden to establish causation.  (*Id.* at 1-2.)  Plaintiff maintains that she "has established that TRESemmé Keratin Smooth shampoo and conditioner containing DMDM, MCI, and MI can cause contact dermatitis and that contact dermatitis can, in turn, cause hair loss (general causation)" based on Dr. Serota's "reliabl[e] opin[ion.]"  (SJM Opp. at 15.)

### A.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact [and] the moving party is entitled to a judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact

---

[6] Plaintiff asserts four causes of action in her Complaint, including three product liability claims (manufacturing defect, design defect, and failure to warn) and one negligence claim. (*See* ECF 1 ¶¶ 46-79.)  In Plaintiff's opposition brief, she withdraws her manufacturing-defect and negligence causes of action.  (*See* SJM Opp. at 3 n.2) ("[Plaintiff] voluntarily dismisses her manufacturing defect and negligence claims (Counts I and IV of the Complaint).")

remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### B. Discussion

The Court agrees with Defendant that Plaintiff's claims fail as a matter of law because Plaintiff cannot establish the element of causation.  Under Pennsylvania law, "[p]roof of causation is a necessary element in a products liability action. Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence, strict liability, or misrepresentation." *Riad v. Porsche Cars N. Am.*, Inc., No. 18-5175, 2024 WL 3606315, at *2 (E.D. Pa. July 30, 2024) (cleaned up).  "[T]o meet her causation burden, plaintiff must first establish that the product is capable of causing the alleged injury (general causation). She must then establish that, in her particular case, the product did in fact cause her alleged injury (specific causation)." *Ream v. Ethicon, Inc.*, No. 20-00922, 2020 WL 6889238, at *4 (M.D. Pa. Nov. 24, 2020) (cleaned up).[7]  "Further, a plaintiff must establish causation through admissible expert testimony." *Ream*, 2020 WL 6889238, at *4 (citation omitted); *see Bailey v. B.S. Quarries, Inc.*, No. 13-3006, 2017 WL 4366987, at *3 (M.D. Pa. Sept. 29, 2017) ("a product liability claim must be supported by expert witness testimony").[8]

Defendant argues that without Plaintiff's expert's opinion on the causation of her hair loss, Plaintiff cannot prove the essential element of her claims, and Defendant is entitled to judgment

---

[7] Plaintiff is a citizen of Pennsylvania, and Defendant "assumes for the purposes of this motion that Pennsylvania law governs the substantive elements of Plaintiff's product-liability claims." (SJM Mot. at 5.)  The law is no different in New Jersey.  *See Coffman v. Keene Corp.*, 133 N.J. 581, 594 (1993) ("causation is a fundamental requisite for establishing any product-liability action"); *Martin v. Blaser Swisslube, Inc.*, No. 03-6116, 2005 WL 3454291, at *2 (D.N.J. Dec. 16, 2005) ("Two types of causation must be established to prevail in a products liability action: product-defect causation, and medical causation.") (citing *Coffman*).

[8] New Jersey courts have reached similar results, concluding that questions of "medical causation" are "plainly outside the common knowledge of the average juror."  *Quail v. Shop-Rite Supermarkets, Inc.*, 455 N.J. Super. 118, 135 (App. Div. 2018); *see Feit*, 271 F. App'x at 252 ("Generally, expert testimony is needed to prove causation of a medical condition.") (applying New Jersey law).

as a matter of law. (SJM Mot. at 9) (citing *Fabrizi v. Rexall Sundown, Inc.*, No. 01-289, 2004 WL 1202984, at \*12 (W.D. Pa. June 2, 2004) (report and recommendation adopted June 24, 2004) ("Where a plaintiff fails to present admissible expert testimony regarding causation, courts routinely have granted summary judgment in favor of the defendant.") (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 165 (3d Cir. 1999)).)[9]

Plaintiff does not respond to Defendant's argument. (*See* SJM Reply at 2) ("Plaintiff does not dispute that if her expert is precluded from testifying at trial, the Court must enter summary judgment in favor of Unilever on all of her claims.") "It is well-settled that failure to meet an opponent's arguments operates as a concession." *Gillham v. Virgin Islands Supreme Court*, No. 22-00044, 2023 WL 4865072, at \*3 (D.V.I. July 28, 2023), *aff'd sub nom. Gillham v. Supreme Court of Virgin Islands*, No. 23-2478, 2025 WL 227687 (3d Cir. Jan. 17, 2025) (citing *In re Bestwall LLC*, 47 F.4th 233, 244 (3d Cir. 2022) (finding that a court may "treat the failure of a party to respond to its opponent's arguments as a concession" that the assertions are true) (cleaned up)). Plaintiff thus concedes that without expert testimony, her claims fail as a matter of law. *See Woodell v. Coach,* No. 22-2222, 2022 WL 17486262, at \*3 (D.N.J. Dec. 7, 2022) ("As [plaintiff] does not address these arguments in his opposition brief, any arguments in opposition are deemed waived.").

Because this Court has found that Plaintiff's expert is precluded from testifying, Plaintiff cannot prove causation, which is an element necessary to establish her product liability claims.

---

[9] *See also Murray v. Consol. Rail Corp.*, No. A-0664-21, 2023 WL 2193825, at \*6 (N.J. Super. Ct. App. Div. Feb. 24, 2023) ("Having affirmed the motion judge's order excluding Dr. Levin's report and testimony, we also affirm his order granting defendant's summary-judgment motion."); *Rice v. Gold Medal Env't of NJ, Inc.*, No. A-0768-22, 2024 WL 1316076, at \*5 (N.J. Super. Ct. App. Div. Mar. 28, 2024) (same); *Olson v. Sunoco, Inc.*, No. A-4769-12T1, 2014 WL 7671579, \*2 (N.J. Super. Ct. App. Div. Jan. 26, 2015) (same); *Schweiger v. Standard Tile Supply*, Co., No. A-1322-18T2, 2019 WL 5783478, \*4 (N.J. Super. Ct. App. Div. Nov. 6, 2019) (same).

Therefore, the Court will enter summary judgment in Defendant's favor and dismiss Plaintiff's remaining design-defect and failure to warn claims. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) ("Inasmuch as Oddi's 'defect expert' does not survive *Daubert* scrutiny, the district court properly granted summary judgment to Ford and Grumman on Oddi's negligent failure to test claim.")

## III.   CONCLUSION

For the reasons stated above, Defendant's motions to preclude (ECF 41) and for summary judgment (ECF 43) are **GRANTED**. Plaintiff's Complaint (ECF 1) is **DISMISSED** with prejudice. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**


Orig:   Clerk
cc:     Michael A. Hammer, U.S.M.J.
        Parties

13